IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| CENTRAL MONTANA RAIL, INC., a Montana Corporation, individually, and as full assignee of the STATE OF MONTANA, of all jurisdictional and substantive legal rights the State of Montana possesses against BNSF Railway Company in this case,<br><br>          Plaintiff,<br><br>   vs.<br><br>BNSF RAILWAY COMPANY, formerly known as The Burlington Northern and Santa Fe Railway Company, a Delaware Corporation,<br><br>          Defendant. | CV-05-116-GF-CSO<br><br><br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

Plaintiff Central Montana Rail, Inc. (hereafter "CMR") initiated this action on November 15, 2005, in the Montana Tenth Judicial District Court, Fergus County, alleging breach of contract, tortious interference with prospective business advantage, and negligent and/or intentional misrepresentation.

-1-

See *Court's Doc. No. 5*.  Defendant BNSF Railway Company (hereafter "BNSF") filed a Notice of Removal (*Court's Doc. No. 1*) to this Court on December 8, 2005, asserting two alternative bases for federal jurisdiction: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332; and (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *Notice of Removal* at 2-3.

On January 6, 2006, pursuant to 28 U.S.C. § 1447(c), CMR filed a Motion to Remand.  See *Court's Doc. No. 7*.  BNSF filed a brief opposing remand on January 27, 2006, to which CMR filed a reply on March 6, 2006.

## I.   FACTUAL ALLEGATIONS

Plaintiff alleges that in 1980 the Chicago, Milwaukee, St. Paul and Pacific Railroad (hereafter "Milwaukee") abandoned the railroad line at issue.  *Plf.'s Compl.* at ¶ 3.  Attempting to save essential portions of the Milwaukee Railroad, the State of Montana (hereafter "the State") determined that the short line from Geraldine, Montana, to Lewistown, Montana (hereafter "Geraldine Line" or "the Line"), was essential to the State's rail system and opposed abandonment during Milwaukee's bankruptcy proceedings.  Id.  Initially , BNSF agreed to buy and rehabilitate the Geraldine Line.  Prior to final approval of the Milwaukee bankruptcy plan, however, BNSF changed its mind and decided not to purchase and/or rehabilitate the Line.  Id. at ¶

-2-

4.

     Because of BNSF's change of mind, the State opposed the
final bankruptcy plan.  In response, BNSF decided to honor its
previous commitment to buy and rehabilitate the Line.  Id. at ¶
5.  After purchasing the Line, BNSF filed for and received a
permit to abandon the Line.  Alleging misrepresentation and
breach of agreement, the State sued BNSF in the District Court of
the Eighth Judicial District Court, Chouteau County.  Id. at ¶ 6.

     Following the State's filing of the suit, the State and BNSF
entered into an agreement dated September 5, 1984.  In exchange
for the State dismissing the lawsuit, BNSF agreed to transfer the
Geraldine Line to the State for the purpose of providing
alternate rail service for the communities served by the Line and
to preserve rail service for the public's benefit.  Id. at ¶ 7.
Under the agreement, the State agreed to obtain a short line
railroad operator to perform rail services on the Line.  In
return, BNSF agreed that it would not compete against the State
and/or the State's short line railroad operator with predatory
pricing and would maintain a competitive rate relationship.  Id.
at ¶ 8.

     On March 12, 1985, the State entered into a lease and
operating agreement with CMR to perform rail services on the
Geraldine Line.  Id. at ¶ 9.  Under the agreement, CMR has the
right to operate the line and to collect revenues from its

operation.  On December 15, 1992, the State and CMR entered into a superseding lease and operating agreement for a term of forty years.  Id.  On November 15, 2005, the State assigned to CMR "in its entirety, all of the State's rights [in the Geraldine Line] to include jurisdiction, claims, interest, and actions, which the State may have against BNSF."  See *Plf.'s Mot. to Remand & Brief in Support* (hereafter "*Plf.'s Brief*") at Ex. B.

Beginning in 2000, CMR asserts that it began negotiating with United Harvest States (hereafter "United Harvest") to put a proposed shuttle facility/elevator (hereafter "facility") on CMR trackage, at Moccasin, Montana, utilizing State land.  BNSF, would not agree to allow the facility to be built.  *Plf.'s Compl.* at ¶ 11.  CMR alleges that BNSF instead encouraged United Harvest to construct a facility less than 500 yards away on BNSF trackage.  CMR further contends that BNSF subsidized the construction of a loop track to the new facility.  Id. at ¶ 12.

United Harvest has constructed a one-hundred and ten car facility at Moccasin.  CMR alleges that "[t]he placement of the shuttle facility/elevator adjacent to the BNSF track, coupled with the preferential tariffs and unpublished incentives has done violence to the CMR's ability to remain competitive with surrounding shuttle facilities/elevator and thus destroyed the competitive rate relationship between CMR's facilities and BNSF's facilities."  Id. at ¶ 13.  CMR contends that, to save revenues,

-4-

it attempted to negotiate a rail connection between itself and the new BNSF/United Harvest facility.  Id. at ¶ 14.

Initially, BNSF would not grant CMR trackage rights.  Later, BNSF agreed to give CMR temporary trackage rights until CMR could build a spur connection track to the facility.  After approving CMR's construction plans for the spur, BNSF drafted a track lease agreement for CMR's signature.  Id. at ¶ 15.  CMR alleges, that based on BNSF's representations, it signed and returned the lease agreement, and began construction of the spur.  CMR contends that it then received a phone call from BNSF in which BNSF canceled the agreement because of operating rail labor issues and advised CMR to stop construction.  Id. at ¶ 16.

CMR asserts that it continued to request trackage rights to the BNSF/United Harvest facility, but BNSF set the liability insurance requirements for those rights so high that it is economically unfeasible for CMR.  CMR alleges that BNSF's action has effectively killed CMR's ability to deliver grain to the facility and has destroyed its ability to maintain competitive rate relationships.  Id. at ¶ 17.  CMR argues that by its actions, BNSF has violated the September 5, 1984, agreement, and has effectively put CMR out of business.  Id. at ¶ 18.

## II.  **STANDARD OF REVIEW**

This Court must "strictly construe the removal statute against removal jurisdiction" and must reject federal

jurisdiction "if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  There is a "strong presumption" against removal, and the Defendant has the burden to establish that removal is proper.  Id.  Any doubts are to be resolved in favor of remand.  Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1118 (9th Cir. 2004)(citing Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003)).

## III. DISCUSSION

### A. PARTIES' ARGUMENTS

On December 8, 2005, BNSF filed a Notice of Removal asserting that "this Court has original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship), and ... pursuant to the provisions of 28 U.S.C. § 1441[.]"  *Notice of Removal* at 2.  Alternatively, BNSF argues that this case presents a federal question, maintaining that the "Plaintiff's claims involve railroad agreements that arise out of, and are expressly and/or impliedly preempted by federal law.  Id. at 3-4.

In its Motion to Remand, CMR argues that both arguments are incorrect.  First, regarding diversity of citizenship, CMR contends that removal is improper because the State is not a citizen for diversity purposes.  *Plf.'s Brief* at 7-8.  CMR asserts that removal is inappropriate because "there was no collusion between the State [ ] and CMR in the State's

assignment." Id. at 8-9.  Further, CMR argues that removal is improper because this case does not involve a federal question. Id. at 9-14.

BNSF responds that it has properly removed this case based on diversity jurisdiction.  *Def.'s Response Brief in Opposition to Plf.'s Mot. to Remand* (hereafter "*Def.'s Brief*") at 5-6.  It contends that the State is irrelevant for purposes of analyzing diversity.  Id. at 6-9.  Further, BNSF asserts that "lack of collusion or improper purpose establishes that removal is proper."  Id. at 9-12.  BNSF also argues that it has properly removed this case based on federal question.  Id. at 12.  It contends that CMR's claims "arise out of" and are preempted by federal law.  Id. at 12-20.

**B.   DIVERSITY JURISDICTION**

The governing provisions of the federal removal statute authorize a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  For purposes of diversity jurisdiction, this case falls within the Court's original jurisdiction only if, "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States[.]"  28 U.S.C. § 1332(a)(1).

Here, the parties agree that the required jurisdictional

amount is met.  The issue is whether complete diversity exists, *i.e.*, there is no plaintiff and no defendant who are citizens of the same State.  Absent collusion, there is diversity jurisdiction "when the real collision of issues, the actual controversy, is between citizens of different States."  <u>Smith v. Sperling</u>, 354 U.S. 91, 97 (1957).  This is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute.  <u>Id</u>.

Plaintiff CMR is a citizen of the State of Montana and Defendant BNSF is a citizen of the States of Delaware and Texas. <u>See</u> *Plf.'s Compl.* at ¶¶ 1-2; *Def.'s Ans.* at ¶¶ 1-2.  Thus, there is complete diversity between the named parties.  Nonetheless, CMR argues that there is no diversity jurisdiction because it is a valid assignee of the State of Montana ("the State") and thus the citizenship of the State must be considered.  The State, of course, is not a citizen for diversity purposes and its presence would defeat diversity jurisdiction.  <u>See</u> <u>Moor v. Alameda County</u>, 411 U.S. 693, 717 (1973) (stating that this "proposition has been established at least since ... <u>Postal Telegraph Cable Co. v. State of Ala.</u>, 155 U.S. 482 (1894)").

The parties agree that the State's assignment to CMR was proper, and not collusively made.[1]  <u>See</u> *Plf.'s Brief* at 9; *Def.'s*

---

[1] Even if the parties did dispute the assignment, the Court finds that the assignment was not improper, nor collusive, for the following reasons.  First, consideration was clearly exchanged and the State

*Brief* at 5; *Plf.'s Reply Brief* at 3.  Hence, 28 U.S.C. § 1359[2] is
not applicable here.  Section 1359 does not prohibit the creation
of diversity by bona fide assignment.  See <u>W. Farm Credit Bank v.</u>
<u>Hamajua Sugar Co., Inc.</u>, 841 F.Supp. 976, 981 (D. Hawaii 1994)
(citing 14C Wright, A. Miller & E. Cooper, <u>Fed. Prac. & Proc.</u> §
3639 at 107 (1985)).

    CMR's reasons that because the State's assignment was valid,
and CMR therefore possesses the State's contractual rights, it
steps into the shoes of the State for diversity purposes, and
cannot be considered a citizen for purposes of determining
jurisdiction.  *Plf.'s Reply Brief* at 6.  CMR has not cited, nor
could the Court find, any case law supporting this novel
proposition.

    On April 21, 2006, CMR filed a Supplemental Authority in
Support of its Motion to Remand.  <u>See</u> *Court's Doc. No. 19*.
Attached to this document was the recent decision issued by

---

obviously had a good business reason for making the assignment.  <u>See</u>
*Plf.'s Brief* at Ex. B, 1 (the State will be "relieved of the costs and
burdens associated with enforcing the September 5, 1984 Contract").
Second, in the agreement, the State assigned to CMR "in its <u>entirety</u>,
all of the State's rights[,]" thus the assignment was absolute.  <u>See</u>
<u>id</u>. (emphasis added).  Because the State has not retained any interest
in the claims or actions, CMR controls this litigation.  Further, this
transaction reflects no improper motive.  <u>See</u> <u>Attorneys Trust v.</u>
<u>Videotape Computer Products, Inc.</u>, 93 F.3d 593 (9th Cir. 1996)
(providing factors that federal courts are to consider when
determining whether an assignment was improper or collusive).

    [2] Title 28 U.S.C. § 1359 provides that "[a] district court shall
not have jurisdiction of a civil action in which any party, by
assignment or otherwise, has been improperly or collusively made or
joined to invoke the jurisdiction of such court."

Senior United States District Judge Charles Lovell in <u>Seven-Up</u> <u>Pete Venture v. Schweitzer</u>, Cause No. CV-00-13-H-CCL, filed on April 11, 2006.  CMR contends that this case supports "its position that this case must be remanded to state court since CMR stands in the shoes of the State of Montana."  *Plf.'s Supp.* at 2.

In his decision, Judge Lovell examined the issue of Eleventh Amendment immunity from suit.  In <u>Seven-Up</u>, the defendants were state governmental officials sued in their official capacities, asserting Eleventh Amendment immunity.  Judge Lovell held that he was without subject matter jurisdiction to adjudicate the claims before him because the court had to "acknowledge Montana's sovereign immunity from suit."  <u>Id</u>. at Ex. A, pg. 6.

The <u>Seven-Up</u> holding does not apply here.  The issue before this Court is not a sovereign immunity challenge by state officials sued in their official capacities, but a jurisdictional challenge in a case between two corporations who are citizens of different states.[3]  Neither the State nor any of its officials is a party in this lawsuit.  The State has assigned its rights and interests to CMR and has not retained any interest in the lawsuit.  CMR acknowledges that it "has all control of this lawsuit."  <u>See</u> *Plf.'s Brief* at 6.  The State is not the real

---

[3] The Court notes that Eleventh Amendment immunity and diversity jurisdiction are treated differently for purposes of determining a federal court's original jurisdiction.  <u>See</u> <u>Wis. Dept. of Corrections v. Schacht</u>, 524 U.S. 381, 388-89 (1998).

party in this case, and its citizenship, or lack thereof, need not be considered.

Based on the foregoing, the Court finds that BNSF has met its burden of establishing that removal is proper.  <u>See</u> <u>Cal. ex rel. Lockyer v. Dynegy</u>, 375 F.3d 831, 838 (9th Cir. 2004) (stating that burden of establishing federal jurisdiction falls to the party invoking the statute).  Pursuant to 28 U.S.C. § 1332(c)(1),[4] the Court finds CMR to be a "citizen" of Montana because it was incorporated in Montana and has its principal place of business here.  Because BNSF is a "citizen" of Texas and Delaware, complete diversity of citizenship exists.  Removal was proper.

Because the Court has found that diversity jurisdiction exists, there is no need to determine whether federal question jurisdiction also exists.

IV.  **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED Plaintiff's Motion to Remand (*Court's Doc. No.* 7) is **DENIED**.

DONE and DATED this 2nd day of May, 2006.

<u>**/S/** Carolyn S. Ostby</u>
Carolyn S. Ostby
United States Magistrate Judge

---

[4] Title 28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]"

-11-